· Edith Ranney & others[1] vs. Board of Appeals
of Nantucket & another[2]
(and two companion cases.[3])

Nantucket.  October 14, 1980. — January 6, 1981.

Present: Brown, Perretta, & Kass, JJ.

Zoning, Special permit, Board of appeals:  notice of hearing, jurisdiction, decision.  Notice.

On an appeal from the granting of a special permit by a municipal board of appeals, there was no merit to the objectors' claim of inadequate notice of the planning board's proceedings under G. L. c. 40A, § 16, on the question of consenting to a second application for the permit, where the judge found on sufficient evidence that the notice requirements of that section had been met and where the objectors, in any event, were not prejudiced by the form of notice as given.  [114-115]

A board of appeals was warranted in finding that the plans or conditions with respect to a motel proprietor's application for a special permit had sufficiently changed to allow the board to consider a second such application within the two-year period prescribed by G. L. c. 40A, § 16, where each of four proposed modifications was responsive to a ground for refusal mentioned by the board in rejecting the first application and where the board considered itself in error concerning certain underlying assumptions affecting the first application. [115-117]

The evidence received by a board of appeals at its hearing on a second application for a special permit within the two-year period prescribed by G. L. c. 40A, § 16, was not limited to the evidence received at the hearing on the first such application.  [117]

---

[1] Eleven other persons claiming to be aggrieved by the action of the board of appeals.

[2] Gilbert F. Waine, trustee of the Beachside Real Estate Trust.

[3] Gilbert F. Waine, trustee, vs. Board of Appeals of Nantucket.  Edith Ranney & others vs. Gilbert F. Waine, trustee, & another.

Where a board of appeals granted a special permit on the condition that
the color of the roof of a proposed structure be approved subsequently
by the board and by the historic district commission, the condition did
not render the board's present grant of the permit invalid.  [118-119]

CIVIL ACTIONS commenced in the Land Court on June 9,
1978, and in the Superior Court Department on August 29,
1978, respectively.

The cases were heard in the Superior Court by *Mitchell*, J.

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 21, 1979.

The case was heard by *Rutledge*, J.

*Gerald H. Abrams* for Edith Ranney & others.

*Sander A. Rikleen* for Gilbert F. Waine.

KASS, J.   This zoning controversy on Nantucket has trig-
gered three actions and three appeals.  It is useful to set the
procedural scene.

As trustee of the Beachside Real Estate Trust, Gilbert F.
Waine applied on March 28, 1978, to the board of appeals
of Nantucket for a special permit to build an addition to the
Beachside Motel.  The board issued a decision refusing a
special permit on May 12, 1978, and Waine brought an ac-
tion under G. L. c. 40A, § 17, as amended by St. 1978,
c. 478, § 32, to annul the action of the board and to order it
to issue a special permit.  That is Case No. 1.

Prudently electing not to stake its all on the outcome of
Case No. 1, the owner of the motel on June 7, 1978, filed an
altered application for a special permit with the board.
Under G. L. c. 40A, § 16, as appearing in St. 1975, c. 808,
§ 3, favorable action on this renewed application required
the consent of the planning board of Nantucket, which gave
it by unanimous vote on June 26, 1978, and a determination
by the board of appeals that the second application con-
tained specific and material changes from the first applica-
tion.  On July 27, 1978, the board voted to grant the special
permit on the basis of the revised application.  This time a
group of neighbors (the objectors) appealed, asserting that

the grant of the special permit was beyond the board's authority and should be annulled. That is Case No. 2, and, so far as we are concerned, the dispositive one.

It was a proviso of the grant of the special permit that the board and the historic district commission approve the roof color of the motel addition. Approval was given by vote of the board dated April 26, 1979 (after receiving the commission's recommendation), from which the objectors also appealed. That is Case No. 3.

As indicated above, we shall concentrate on Case No. 2, the appeal from the grant of the special permit. The principal issue in that case was whether the second application was sufficiently different from the first to surmount the bar of the two-year moratorium imposed by G. L. c. 40A, § 16, on requests for permits previously rejected. Section 16 provides that "[n]o . . . application . . . which has been unfavorably and finally acted upon . . . shall be acted favorably upon within two years . . . unless . . . [the] permit granting authority finds . . . specific and material changes in the conditions upon which the previous unfavorable action was based . . . and unless all but one of the members of the planning board consents thereto and after notice is given to parties in interest of the time and place of the proceedings when the question of such consent will be considered." A judge of the Superior Court held that the granting of the permit was within the board's authority. We affirm.

1. *Adequacy of notice.* The record does not support the objectors' contention that the planning board failed to give notice to interested parties of the proceedings at which it would consider consenting to a second application for a special permit. The judge found that the notice requirements of § 16 had been met through notice given by mail and by publication in the local newspaper. This finding had foundation in the evidence. Moreover, the objectors were in attendance at the June 26, 1978, meeting of the planning board and their registration of their opposition included the reading of a letter from their lawyer. They were well prepared for the session and were not prejudiced by any defect

in the form of notice, if any such defect lurked. See *Kasper* v. *Board of Appeals of Watertown,* 3 Mass. App. Ct. 251, 254, 257-258 (1975).

2. *Materiality of changes in second application.* Section 16 of The Zoning Act differs from its predecessor in the "old" zoning enabling act[4] in that it requires the board to make a finding of specific and material changes attending the subsequent proposal in order to consider it. Under the former provision it was enough to obtain the consent of the planning board to a second bite at the apple. See *Shalbey* v. *Board of Appeal of Norwood,* 6 Mass. App. Ct. 521, 522-523 (1978). What constitutes a sufficiently revised reapplication for zoning relief has not been previously discussed in our decisions. In considering the question we have in mind the policy which underlies statutory texts such as § 16: to give finality to administrative proceedings and to spare affected property owners from having to go repeatedly to the barricades on the same issue. *Dadukian* v. *Zoning Bd. of Appeals of Bridgeport,* 135 Conn. 706, 711-712 (1949). *Bois* v. *Manchester,* 113 N.H. 339, 341 (1973). Note, "Zoning Variances," 74 Harv.L.Rev. 1396, 1399-1400 (1961). 7 Rohan, Zoning and Land Use Controls § 51.07[1] (1979). 3 Yokley, Zoning Law and Practice § 18-10 (1979).

On the other hand there is merit in allowing the local permit granting authority some flexibility in reconsidering a request for a special permit in the light of altered conditions. Not least of all, this offers the possibility of land use solutions sufficiently acceptable to the contending parties to keep the matter out of the courts. (The instant case illustrates that this advantage may be more theoretical than real.)

To the extent that the local board makes findings that a reapplication is accompanied by circumstances which are specifically and materially different, such a local determination ought to receive the deference from a reviewing court which is generally accorded to the discretionary as-

---

[4] G. L. c. 40A, § 20, as in effect prior to St. 1975, c. 808, § 3.

pects of local zoning decisions. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557-558 (1954). *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277-278 (1969). *Caruso* v. *Pastan*, 1 Mass. App. Ct. 28, 29-30 (1973). *Shalbey* v. *Board of Appeal of Norwood*, 6 Mass. App. Ct. at 529. *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486-487 (1979). Whether the plans or the surrounding conditions have changed sufficiently to justify a reapplication during the moratorium period is principally for the local board to determine. See *Rocchi* v. *Zoning Bd. of Appeals of Glastonbury*, 157 Conn. 106, 111-112 (1968); *Bois* v. *Manchester*, 113 N.H. at 341-342; 3 Rathkopf, Zoning and Planning § 37.08[2], at 37-103 (4th ed. 1980). The board may give weight to differences which in an absolute sense are relatively minor. See *American Seminary of the Bible, Inc.* v. *Board of Standards & Appeals of N.Y.*, 280 App. Div. 792, 793 (N.Y. 1952) (construction of brick wall along frontage); *Rocchi* v. *Zoning Bd. of Appeals of Glastonbury, supra* at 111-112 (relocation of access); *In re Crescent Beach Assn.*, 126 Vt. 140, 141 (1966) (limitations on proposed use).

It has always been supposed that if an application disclosed a project materially different from the one first introduced, the bar of § 16 or its predecessor, § 20 of the old act, would not stand in the way. See *Cities Serv. Oil Co.* v. *Board of Appeals of Bedford*, 338 Mass. 719, 728 (1959). The substitution of an apartment building for a motel wing or an office building for a store block would be an example of an undertaking so fundamentally different from that first proposed as not to confront the barrier of § 16. Necessarily, then, the specific and material changes which § 16 requires must be something less than differences so radical that they obviate scrutiny under the statute altogether. The board cited the following as significant and material changes:

1. revision of the outdoor lighting plan so that all lights were flush with the ceiling and elimination

of direct lights or fixtures which might be visible in any direction from an elevation twenty feet above the level of the parking area;

2. installation of blackout drapes in the windows of the proposed addition;

3. installation of sound insulating materials in the exterior walls of the proposed addition so as to suppress noise;

4. landscaping of parking area along its westerly boundary with an eight foot privet hedge.

Each of these modifications was responsive to a ground of refusal mentioned by the board in its rejection of the first application. While each of the changes taken in isolation has a cosmetic quality, taken together they resulted in a less intrusive building, and it was this intrusive character which evoked the initial rejection. We are of the opinion that the board was warranted in concluding that changes directly responsive to the board's initial objections were specific and material within the meaning of the statute. The board's findings also suggest that the board regarded itself as having acted on erroneous information in concluding initially that the proposed motel addition would adversely affect traffic on North Beach Street and the value of nearby residential properties. To the extent that the board thought itself in error about underlying assumptions concerning the proposal, this constituted a change of circumstances which permitted the board to entertain a second application for zoning relief. We have considered and reject the objectors' contention that a hearing on a second application should be limited to evidence received at the hearing on the first application. No such limitation is implied, let alone expressed, in the statute or our decisions.

In his findings, the trial judge confirmed the findings of the board, i.e., that the second application contained revisions which were significant and substantial. See *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 (1972).

Such findings we leave undisturbed unless clearly erroneous. *Shalbey* v. *Board of Appeal of Norwood,* 6 Mass. App. Ct. at 529. *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord,* 9 Mass. App. Ct. 477, 480 (1980). As is the practice in cases brought under G. L. c. 40A, § 17 (and its predecessor statute), the burden rests upon the applicant for zoning relief to produce evidence at trial that the statutory prerequisites for relief have been met. See *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555-556 (1962); *Boyajian* v. *Board of Appeal of Wellesley,* 6 Mass. App. Ct. 283, 284 (1978).

3. *Validity of deferred decision on roof color.* It was a condition of the special permit granted by the board "[t]hat the roof of the proposed addition have an exterior cover of suitable shingle or other material and that the color of the shingle or covering be approved by the Historic Districts Commission and by the Board of Appeals." The objectors argue that this language required a further determination of substance by the board or other town authority before a permit might issue, thus rendering the board's decision invalid. See *Weld* v. *Board of Appeals of Gloucester,* 345 Mass. 37, 378-379 (1963). Here, however, the board made a present grant of a permit and reserved to itself review of compliance with conditions it imposed. *Zartarian* v. *Minkin,* 357 Mass. 14, 18 (1970) (additional off-street parking space shall be provided as deemed necessary by the board). *Kiss* v. *Board of Appeals of Longmeadow,* 371 Mass. 147, 158-159 (1976) (building plans, the facility for off-street parking, the buffer areas surrounding the building, the size, type and location of signs and the location of the building on the lot to be approved by a majority vote of the planning board and the board of appeal). Contrast *Potter* v. *Board of Appeals of Mansfield,* 1 Mass. App. Ct. 89, 96-97 (1973) (decision of the board required review of evidence not yet before it). Here the board had only to approve a color, and the criteria for judgment and color choices were before the board at the time it issued its permit.

The roof color which the board approved was Nantucket grey, an option the board had reserved in its decision granting the special permit. The board was not bound to choose a darker color merely because that decision had viewed a darker color with favor. Nor was it necessary for the board to give notice and hold hearings prior to taking action on the roof color. As we have noted, evidence touching on the pros and cons of roof color choices had been received at the public meeting which preceded the grant of the special permit. Its later meeting and action served merely to implement the decision already taken. See *Selectmen of Kingston* v. *Board of Appeals of Kingston*, 3 Mass. App. Ct. 704 (1975) (advertisement and notice not required as to proceedings on remand).

4. *Case No. 1 and Case No. 3.* Since our resolution of Case No. 2, the appeal of the grant of the special permit, is favorable to the motel owner, Case No. 1, his appeal from the board's initial denial of a permit, is moot. Case No. 3, the objectors' appeal from the board's decision on roof color, raises factual issues and legal issues resolved, or susceptible of resolution, in Case No. 2. The objectors are precluded from raising the issues again, and the judge in Case No. 3 was right in holding that res judicata barred the third action. See *Fassas* v. *First Bank & Trust Co.*, 353 Mass. 628, 629-630 (1968); *Morganelli* v. *Building Inspector of Canton*, 7 Mass. App. Ct. 475, 479-480 (1979). Parenthetically, the precautionary disposition of the case on the merits in Case No. 3 by the judge was also correct.

5. *Evidentiary issues.* To the extent that the exclusions of certain evidence by the judge in Case No. 2 were in error or inconsistent with his findings, those errors were harmless because the evidence bore on issues peripheral to decision of the case.

*Judgments affirmed.*