Coos
No. 2011-776

TOWN OF CARROLL

v.

WILLIAM RINES

Argued: June 13, 2012
Resubmitted: December 7, 2012
Opinion Issued: January 30, 2013

524

*Gardner Fulton and Waugh P.L.L.C.*, of Lebanon (*H. Bernard Waugh, Jr.* on the brief and orally), for the petitioner.

*D'Amante Couser Pellerin & Associates, P.A.*, of Concord (*Bruce J. Marshall* on the brief and orally), for the respondent.

CONBOY, J. The respondent, William Rines, appeals an order of the Superior Court (*Vaughan*, J.) that enjoined him from excavating on certain real property until he obtained a local use variance from the petitioner, Town of Carroll (Town), and that imposed civil penalties and attorney's fees. *See* RSA 676:17 (2008 & Supp. 2012). We affirm in part, vacate in part, and remand.

The parties stipulated to, or the record supports, the following facts. The respondent owns two lots and controls two additional lots for excavation purposes in Carroll's Residential Business District (R-B district). In October 2009, the Town filed a petition to enjoin him from excavating on all four lots, contending that he was in violation of RSA chapter 155-E (2002 & Supp. 2012), as well as the Town's zoning ordinance. On December 29, 2009, the trial court approved a stipulation between the parties pursuant to which the respondent agreed not to excavate during the pendency of the lawsuit unless he obtained a permit from the planning board and a variance pursuant to the Town's zoning ordinance, and posted any required bonds. After the respondent entered into the stipulation, he continued to remove previously excavated, stockpiled material from the lots for use on highway projects.

In the spring of 2010, the respondent received approval from the planning board to subdivide the two lots he owns; thereafter, he began excavating on those lots. Further court proceedings ensued, resulting in a court order of June 22, 2010, denying the respondent's request for *ex parte* relief. According to the parties' agreed upon statement of facts, following that court order, the respondent "has not severed any further materials from the ground."

In June 2011, the trial court held a final hearing on the Town's original petition to enjoin the respondent's excavation activities and recover civil penalties and attorney's fees. The trial court found that the respondent engaged in two types of excavation on the four lots: (1) from the date of the stipulation, December 29, 2009, until the respondent received subdivision approval in the spring of 2010, he excavated for highway purposes; and (2) from the date of subdivision approval to the date on which the respondent ceased all excavation, June 22, 2010, he excavated either for highway purposes or for purposes incidental to constructing a building, structure, parking lot, or way.

Ultimately, the trial court concluded that: (1) both types of excavation were exempt from the permitting requirements of RSA chapter 155-E; (2) the Town's zoning ordinance required the respondent to obtain a variance

before excavating; and (3) RSA chapter 155-E did not preempt the Town's zoning ordinance. The court did not find the respondent in contempt for violating the stipulation. Instead, it enjoined him from excavating on the lots; imposed civil penalties pursuant to RSA 676:17, I, for the period between December 29, 2009, and June 22, 2010; and awarded mandatory attorney's fees. The respondent appealed.

On appeal, the respondent argues that: (1) the trial court erred by construing the Town's zoning ordinance to require him to obtain a variance to excavate in the R-B district; (2) the trial court erred by ruling that RSA chapter 155-E does not preempt the variance requirement; (3) the removal of stockpiled material does not constitute excavation pursuant to RSA 155-E:1, II (2002); (4) there was insufficient evidence to conclude that the respondent excavated between December 29, 2009, and June 22, 2010; and (5) the trial court erred by awarding mandatory attorney's fees.

The respondent first contends that the trial court erred by construing the Town's zoning ordinance to require him to obtain a variance to excavate in the Town's R-B district. The interpretation of a zoning ordinance is a question of law, which we review *de novo*. *Pike Indus. v. Woodward*, 160 N.H. 259, 262 (2010). We construe the words and phrases of an ordinance according to the common and approved usage of the language. *Id.* When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.*

The ordinance establishes districts, expressly sets forth permitted uses within each district, and specifies uses that are allowed only by special exception. *See* TOWN OF CARROLL ZONING ORDINANCE, art. III, sec. 301, 303. Excavation is not a use permitted as of right in any district. *See id.* However, the ordinance does allow certain excavation activities in the "Residential (Breton Woods)" and "Industrial" districts by special exception. *See id.* art. III, sec. 303.2, 303.4. The ordinance does not expressly allow excavation by special exception within the R-B district. *See id.* art. III, sec. 303.3.

The respondent argues that he is not required to obtain a variance pursuant to the Town's ordinance because: (1) on its face, the ordinance does not require a variance; (2) the ordinance regulates gravel pits only; and (3) the Town has not previously interpreted the ordinance to require an excavation variance for an approved subdivision.

■ We reject the respondent's contention that, because the ordinance does not expressly require a variance, he is not required to obtain a variance for highway excavation. The Town's ordinance is a permissive zoning ordinance. *See id.* art. III, sec. 304. That is, it is "intended to prevent uses except those expressly permitted or incidental to uses so permitted."

*Tonnesen v. Town of Gilmanton*, 156 N.H. 813, 815 (2008) (quotation omitted). Article III sets forth the uses permitted within each district and the uses allowed only upon the granting of a special exception. Article III neither permits excavation in the R-B district, nor allows excavation as a special exception. Accordingly, in the absence of a variance, excavation in the R-B district is generally prohibited. *See New London v. Leskiewicz*, 110 N.H. 462, 466 (1970) (defining variance as the "authority granted to the owner to use his property in a manner otherwise violative of the zoning regulations").

Nor is the variance requirement limited to gravel pits, as asserted by the respondent. The ordinance does not permit, by special exception or otherwise, excavation within the R-B district. As a result, the respondent's argument is without merit.

■ Further, the Town's prior interpretation of the zoning ordinance is not relevant to our analysis. We construe the respondent's argument to assert the doctrine of administrative gloss, which is a rule of statutory construction. *See Petition of Kalar*, 162 N.H. 314, 321 (2011). "Administrative gloss is placed upon an ambiguous clause when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference." *Id.* (quotation omitted). However, "a lack of ambiguity in a statute or [an] ordinance precludes application of the administrative gloss doctrine." *Anderson v. Motorsports Holdings*, 155 N.H. 491, 502 (2007). Here, the Town's ordinance is not ambiguous. Thus, we reject the respondent's argument and conclude that the trial court did not err by interpreting the Town's zoning ordinance to require the respondent to obtain a variance before engaging in excavation for use in highway projects in the R-B district.

■ To the extent, however, that the trial court ruled that the respondent was required to obtain a variance to conduct excavation incidental to the construction of an otherwise permitted building, we conclude that it erred. As noted above, a permissive zoning ordinance is "intended to prevent uses except those expressly permitted *or incidental to uses so permitted.*" *Tonnesen*, 156 N.H. at 815 (quotation omitted) (emphasis added). Excavation that is merely incidental to the construction of an otherwise permitted building is, therefore, allowable under the ordinance regardless of whether the ordinance expressly allows the excavation. It is unclear on this record what portion, if any, of the excavation was incidental to the construction of a building, and whether the respondent had obtained all necessary state and local permits for the excavation, *see* RSA 155-E:2-a, I(a) (2002). As a result, we vacate that portion of the trial court's order finding that a

variance is required to conduct excavation incidental to construction of a building, and remand for further proceedings consistent with this opinion.

 We next consider whether RSA chapter 155-E preempts the Town's variance requirement. "The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law." *Forsberg v. Kearsarge Reg'l Sch. Dist.*, 160 N.H 264, 269 (2010) (quotation omitted). "Preemption may be express or implied." *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004). Here, the respondent argues implied preemption. Implied preemption may be found when the comprehensiveness and detail of the State statutory scheme evinces legislative intent to supersede local regulation. *Id.* State law also impliedly preempts local law when there is an actual conflict between the two. *Id.* A conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits or vice versa. *Id.* Moreover, even when a local ordinance does not expressly conflict with a State statute, it will be preempted when it frustrates the statute's purpose. *Id.*

Whether a State statute preempts local regulation is a question of law, which we review *de novo. Guildhall Sand & Gravel v. Town of Goshen*, 155 N.H. 762, 764 (2007). "In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." *Id.* "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.*

We begin with the statute. RSA chapter 155-E regulates local excavations. The statute delineates those excavations that require permits and those that are exempt from permitting. *See* RSA 155-E:2 (2002), :2-a (2002). Excavations that are not specifically exempt under the statute require a permit. *See* RSA 155-E:2. If a permit is required, the owner must "apply to the regulator in each city or town involved for a permit for excavation." RSA 155-E:3 (2002). The statute also requires that excavations comply with "operational" and "reclamation" standards, whether or not the excavation is exempt from permitting. *See* RSA 155-E:4-a, :5, :5-a (2002). With regard to permit-exempt excavations, those standards are deemed "express standards." *See* RSA 155-E:4-a, :5. With regard to excavations that require a permit, those standards are deemed "minimum standards," *see id.*, and such excavations must also comply with other requirements established by local regulations, provided such requirements do not conflict with RSA chapter 155-E, *see Guildhall*, 155 N.H. at 765.

The trial court found that the respondent's excavation activities were permit-exempt under RSA 155-E:2, IV. The respondent does not challenge that finding. RSA 155-E:2, IV provides, in part:

No permit shall be required . . . for excavation which is performed exclusively for the lawful construction, reconstruction, or maintenance of a class I, II, III, IV or V highway by a unit of government having jurisdiction for the highway or an agent of the unit of government which has a contract for the construction, reconstruction, or maintenance of the highway, subject, however, to the following: . . . .

(b) *Such excavation shall not be exempt from local zoning or other applicable ordinances*, unless [the New Hampshire Transportation Appeals Board, following a hearing, grants the Department of Transportation or its agent an exemption from local zoning regulations relative to the excavation], or from the operational and reclamation standards as expressly set forth in RSA 155-E:4-a, 155-E:5 and 155-E:5-a, which express standards shall be the sole standards with which such excavations must comply in order to retain their non-permit status as provided under this paragraph.

(Emphasis added.)

The respondent contends that because the trial court concluded that his excavations were permit-exempt, the Town's variance requirement is preempted by RSA chapter 155-E. The Town argues, however, that the plain language of RSA 155-E:2, IV(b) reflects the legislature's intent not to preempt its variance requirement for the respondent's excavation for highway purposes. We agree with the Town.

■ RSA chapter 155-E constitutes a comprehensive, detailed scheme regulating excavations. *Arthur Whitcomb, Inc. v. Town of Carroll*, 141 N.H. 402, 406 (1996). "The legislature's purpose in enacting [the statute] was, in part, to increase the supply of construction materials and decrease the cost of roads and other governmental infrastructure to the public by curtailing simultaneous state and local regulations of the same activity." *Id.* at 407 (quotation omitted). The statute distinguishes between excavations that require permits and those that do not. *See* RSA 155-E:2, :2-a. It further establishes "minimum" operational and reclamation standards for those excavations that require permits and "express" standards for those excavations that are permit-exempt. *See* RSA 155-E:4-a, :5. This classification "evince[s] a legislative intent that the standards applied to excavations requiring permits and those not requiring permits differ." *Guildhall*, 155 N.H. at 765.

■■ Because excavations requiring permits are subject only to "minimum" standards, "it follows that municipalities are not preempted from

imposing more stringent regulations upon those types of excavations." *Id.* However, not all permit-exempt excavations are relieved of the obligation to comply with local regulation because "[t]he exemptions from local ordinances and regulations found in [the statute] are not unconditional." *Arthur Whitcomb*, 141 N.H. at 407. The statute specifically provides that excavation performed exclusively for certain highway projects "shall not be exempt from local zoning or other applicable ordinances, unless [the Department of Transportation or its agent is granted an exemption]," or from certain statutory operational and reclamation standards, which "shall be the sole standards with which such excavations must comply in order to retain their non-permit status." RSA 155-E:2, IV(b). Thus, RSA 155-E:2, IV evinces the legislature's intent to preempt local regulation of excavation undertaken exclusively for highway construction purposes only with respect to the statutory operational and reclamation standards. All other local regulations applicable to highway excavation are not preempted, unless an exemption from those regulations is granted. *See* RSA 155-E:11, I (Supp. 2012) ("Whenever . . . local regulations differ from the provisions of [RSA chapter 155-E], the provision which imposes the greater restriction or higher standard shall be controlling, except that no local regulation shall supersede the sole applicability of express standards under RSA 155-E:2, I, III, and IV.").

▮ The respondent argues that our holdings in *Arthur Whitcomb* and *Guildhall* support the conclusion that RSA chapter 155-E preempts the Town's variance requirement. We disagree. In *Arthur Whitcomb*, a case involving excavation associated with a permit-exempt stationary manufacturing plant, *see* RSA 155-E:2, III, we held that by enacting the statute, the legislature intended to preempt "only local ordinances and regulations that would have the effect or intent of frustrating State authority" to regulate the field of excavation. *Arthur Whitcomb*, 141 N.H. at 409 (quotation omitted). Given that the legislature specifically authorized local regulation in connection with highway excavation, we conclude that such authorized local regulation does not frustrate State authority.

▮ Indeed, in *Arthur Whitcomb*, we recognized, by way of example, that with regard to highway excavation, the statutory provision stating that "[s]uch excavation shall not be exempt from local zoning or other applicable ordinances," RSA 155-E:2, IV(b), is not unconditional. *Id.* at 407 (emphasis omitted). We noted, therefore, that such a provision "cannot be deemed redundant or unnecessary in a statutory scheme that preempts local legislation." *Id.* Likewise, we quoted with approval the trial court's conclusion that "the legislature generally intended chapter 155-E to preempt local land use regulations[,] *except where specifically indicated to the contrary.*"

*Id.* at 408. Thus, nothing in *Arthur Whitcomb* vitiates the controlling statutory provisions in this case. The generally preemptive effect of the statutory scheme does not invalidate express statutory provisions that authorize local legislation.

In *Guildhall*, a case involving permit-required excavation, we held that the legislature did not intend to preempt local regulation of such excavation. *See Guildhall*, 155 N.H. at 765. We concluded that "because the legislature has clearly stated that RSA chapter 155-E contains only 'minimum' requirements for excavations that require a permit, it follows that municipalities are not preempted from imposing more stringent regulations upon those types of excavations." *Id.* Further, we clarified that the *Arthur Whitcomb* holding applies only to permit-exempt excavations. *See id.* at 767. We also stated, in dicta, that ordinances purporting to regulate permit-exempt excavations would be preempted. *See id.* at 767-68. This broad statement, however, is inconsistent with the underlying reasoning in *Arthur Whitcomb*, and is at odds with the express statutory provisions relevant here. Thus, we conclude that neither *Arthur Whitcomb* nor *Guildhall* supports the respondent's argument.

The respondent next argues that the trial court erred by concluding that the removal of previously excavated, stockpiled material constitutes "excavation" pursuant to RSA 155-E:1, II. We need not decide this issue, however, because even if such conduct does not constitute "excavation" under the statute, the trial court ruled that this conduct, in the absence of a variance, violated the Town's zoning ordinance. The record supports the trial court's ruling, and the respondent does not, on appeal, assert that the removal of previously excavated, stockpiled material is permitted under the ordinance.

Next, the respondent argues that the trial court erred when it determined that he was subject to penalties under RSA 676:17, I (setting forth penalties for ordinance violations) for the entire period of his excavation activities. The respondent's argument stems from his assertion that he did not violate either the parties' stipulation or RSA chapter 155-E. Because the trial court sustainably found that a variance is required under the ordinance for the removal of previously excavated, stockpiled material, we reject the respondent's argument as it relates to such activity. However, we nonetheless vacate the trial court's imposition of statutory penalties because it is unclear the extent to which they are based upon excavation that may have been conducted incidental to construction of an otherwise permitted building — which excavation is allowed under the ordinance without a variance. On remand, the trial court shall determine the extent to which any excavation was conducted incidental to such construction and shall revisit the issue of statutory penalties.

 Finally, the respondent contends that the trial court erred by ruling that the Town is entitled to attorney's fees as the prevailing party in this case. Specifically, he contends that the trial court erred in concluding that the award of attorney's fees under RSA 155-E:10, II is mandatory. However, the respondent's argument stems from a misunderstanding of the trial court's order. Although the trial court concluded that attorney's fees were mandatory, it did not impose them pursuant to RSA 155-E:10, II; rather, the court imposed attorney's fees pursuant to RSA 676:17, II based upon the respondent's violation of the zoning ordinance. RSA 676:17, II provides that "the municipality *shall* recover its costs and reasonable attorney's fees actually expended in pursuing the legal action if it is found to be a prevailing party in the action." (Emphasis added.) The award of attorney's fees pursuant to RSA 676:17, II is mandatory. *See Bennett v. Town of Hampstead*, 157 N.H. 477, 484 (2008).

 Nonetheless, we vacate the trial court's award of attorney's fees because, as with the trial court's imposition of statutory penalties, it is unclear the extent to which the award is based upon excavation that may have been conducted incidental to construction of an otherwise permitted building. Following the trial court's determination on remand as to the extent to which the respondent excavated incidental to constructing a building, it shall revisit the issue of attorney's fees. *See Van Der Stok v. Van Voorhees*, 151 N.H. 679, 685 (2005) (where party prevails on some claims and not others, and where unsuccessful claims are analytically severable, any fee award should be reduced to exclude time spent on unsuccessful claims).

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.